IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SUSAN WILDING,

    Plaintiff,

v.                                          No. 13cv745 RB/RHS

OWNER OF CHRISTUS;
CHRISTUS ST. VINCENT HOSPITAL;
DR. JAMES P. SMITH;
UNION 1199 OF N.M.;
MY XPOA RICHARD MARTINEZ;
UNION LAWYER SHANE YONTZ,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## DISMISSING COMPLAINT

**THIS MATTER** comes before the Court on pro-se Plaintiff Susan Wilding's *Application to Proceed in District Court without Prepayment of Costs or Fees* (hereinafter called "motion to proceed IFP"), filed August 12, 2013 (Doc. 3), and on the Court's concomitant obligation "to review the affidavit and screen her case under 28 U.S.C. §§ 1915(a) and (e)." *Lister v. Dep't of the Treasury*, 408 F.3d 1309, 1311 (10th Cir. 2005). Screening the case under § 1915(e) includes determining whether "the allegation of poverty is untrue" as well as determining whether the action "is frivolous or malicious, . . . fails to state a claim on which relief may be granted; or [] seeks monetary relief against a defendant who is immune from such relief." § 1915(e). "[I]n order to succeed on a motion to proceed IFP, the movant must show a financial inability to pay the required filing fees, as well as the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised in the action." *Lister*, 408 F.3d at 1312. The Court must "dismiss the case" if it determines that any of the conditions in §

1915(e)(2)(B) exist. *See* § 1915(e)(2); *Trujillo v. Williams*, 465 F.3d 1210, 1217 n.5 (10th Cir. 2006) (noting that dismissals under § 1915(e)(2)(A) & (B) are mandatory).

## I. WILDING HAS FAILED TO DEMONSTRATE THAT SHE IS IMPOVERISHED.

IFP status should be granted only if a plaintiff demonstrates that she "cannot because of [her] poverty pay or give security for the costs . . . and still be able to provide [her]self . . . with the necessities of life." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948). Wilding's IFP form is a scribbled mess that is virtually illegible. Wilding, who is 57 years old and has no dependents, is a registered nurse but now receives $1886/month in SSD benefits, and her husband receives more than $600/month in disability benefits. *See* Doc. 3 at 1, 2; Doc. 1-1 at 5. Although she states that she rents a house, she put $0 as the amount she pays for rent and mentions getting evicted. *See id.* at 3, 4. Although the current national monthly average "thrifty food plan" costs for a couple in Wilding's age group is about $359 month[1], Wilding claims they spend $400/month on food, *see id.* at 4, which is excessive under the circumstances. They spend $200/month on utilities, which seems improbable if they have been evicted; and $60/month for laundry and dry cleaning, which, again, is excessive under the circumstances. *See id.* Although Wilding's husband apparently is covered by medicare/medicaid, Wilding states that he paid $500 this month for dental expenses. *See id.* at 4. Wilding recently purchased a computer, and travels between New Mexico and Florida, where she currently resides. *See id.* at 2. She has $200 in her checking account.

On these facts, the Court concludes that Wilding has failed to show that she cannot, because of her poverty, provide herself with the necessities of life and pay the filing fee. *See*

---

[1] *See* Official USDA Food Plans, Average for June, 2013, located at http://www.cnpp.usda.gov/USDAFoodCost-Home.htm.

*Adkins*, 335 U.S. at 339.  Her motion to proceed IFP will be denied and her Complaint should be dismissed on that ground alone.  *See* § 1915(e)(2)(A); *Trujillo*, 465 F.3d at 1217 n. 5.  As set forth below, the Complaint must also be dismissed for more substantive reasons.

### II.   APPLICABLE LEGAL STANDARDS

The Tenth Circuit Court of Appeals has set forth the following standards that district courts should apply in resolving a motion to dismiss brought under rule 12(b)(6) of the Federal Rules of Civil Procedure.

> *Bell Atlantic Corp. v. Twombly* [] reject[ed] the "no set of facts" language of *Conley* [ *v. Gibson*, 355 U.S. 41, 45-46 (1957),] and announc[ed] a new (or clarified) standard: to withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." --- U.S. ----, ----, 127 S. Ct. 1955, 1974, 167 L. Ed.2d 929 (2007).  Under this revised standard, as we explained in *Ridge at Red Hawk, L.L.C. v. Schneider*:
>
>> the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.
>
> 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).  The burden is on the plaintiff to frame a "complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief.  *Twombly*, 127 S. Ct. at 1965.  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.*

*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

The Court applies this same standard in its review under § 1915(e)(2) to determine whether Wilding has stated a cognizable federal claim against the Defendants.  *See Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007).  The Court will accept as true Wilding's allegations and construe them, and any reasonable inferences to be drawn from them, in the light most favorable to her.  *See id.*  But the Court "will not supply additional facts, [or] construct a legal theory for

[a] plaintiff that assumes facts that have not been pleaded." *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989).

The courts take a two-step approach in determining whether a complaint states a claim upon which relief may be granted. First, it "identif[ies] the [conclusory] allegations in the complaint that are not entitled to the assumption of truth" and disregards them. *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). Then it only "consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id.* at 681; *see id.* at 686 (rejecting the plaintiff's argument that he sufficiently stated a claim for relief by generally alleging that the defendants "discriminated against him 'on account of [his] religion, race, and/or national origin and for no legitimate penological interest,'" and stating, "[w]ere we required to accept this allegation as true, respondent's complaint would survive petitioners' motion to dismiss. But the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.") (citations omitted).

### III. WILDING'S ALLEGATIONS.

Wilding's handwritten Complaint is virtually illegible. *See* Doc. 1. The Court could not interpret enough of her scribbling to determine what her cause of action involves, but Wilding mentions the Age Discrimination in Employment Act and the Equal Pay Act. *See* Compl. at 3. The Court could decipher Wilding's statements that Richard Martinez, who apparently formerly had her power of attorney ("POA") for an unstated reason, "rescinded his POA with no notice on December 1, 2012," *id.* at 2, and her unintelligible statement that he "was abusive to [her] and explained the details [some] to the hospital and union and told them he is not to work with him they continued to work with him," *id.* at 4. The Court could also decipher the words that

Wilding "was paid not as an hourly exempt employee for scheduled hrs, overtime hrs, called in hrs, bonus days, etc." *Id.* at 3.

The Court is able to decipher the words: "union refused to honor my contract negotiated rights," *id.* at 2, and "union would not support me as they did others," *id.* at 3, and "union refused to represent me stated I wasn't a member for ???? 4 months but union dues were paid." *Id.* at 5. Wilding attached a May 2, 2013 "Dismissal and Notice of Rights" letter from the EEOC stating that it "adopted the findings of the state or local fair employment practices agency that investigated this charge" and warning Wilding that she had to file her discrimination suit within 90 days of receiving the letter and that EPA claims had to be filed within 2 years of an alleged underpayment. Doc. 1-1 at 1.

On August 16, 2013, Wilding filed a Notice of Dismissal stating that she wanted to withdraw her Complaint and her motion to proceed IFP. *See* Doc. 4. Three days later, however, Wilding filed a legible handwritten document in which she moves to withdraw her notice of dismissal, stating that she withdrew it "under duress" after talking about her "civil rights" claims with a lawyer who advised her to dismiss the suit. *See* Doc. 5 at 1, 2. She requests appointment of counsel because of a diagnosis of Attention Deficit Disorder. *See id.* at 3.

On August 19, Wilding filed another legible handwritten document entitled "Amendment" which again seeks to "not release" her claims against Christus St. Vincent and to withdraw her motion "to not proceed [ifp]." Doc. 6 at 1. This document sets forth more information about her suit that the Court has considered in determining whether she has stated viable federal claims.

In the Amendment, Wilding complains that her union failed to obtain the relief she desired of getting "back wages demand audit and money due paid," and failed to file "a

grievance for more than $100,000 of back wages," *id.* at 2-3, and that they were responsible for "upholding [her] union employee rights to protect my working conditions, my hourly wages and benefits, and equal treatment to other qualified workers who did the same job," *id.* at 5. She states that the union told her that it had "no jurisdiction over managers and scheduling" despite policy to the contrary, and was " not willing to uphold" her rights  *Id.* at 6-7.

Wilding states that the hospital's "top management" had "admitted" that she was due "contract negotiated union pay and benefits," and that she had not been paid those amounts due to "intentional, wilful, deceitful, neglectful employee errors." *Id.* at 3. She states that other employees who were being correctly paid were "Asian, Indian (middle East), Hispanic, Younger, of a different Gender: male, and did not see a psychiatrist on a regular basis." *Id.* at 4. She states that her "disability was inevitable if [she] did not start getting paid equally and on time without harassment." *Id.* Wilding states that she submitted "edit sheets . . . correctly and on time or soon thereafter" but was not properly paid, and that when she pressed the issue, she was given a schedule of rotating days, evenings and nights that no one else was given. *Id.* at 5-6. She states that the union failed to protect her rights and would not allow her to both file a grievance and "go to state wage and labor." *Id.* at 7. Wilding states that Pearl Mohnkern, "V.P. of H.R." at Christus St. Vincent "sabatage[d]" [sic] her into thinking that she would be paid after an audit was conducted and indicates that she had not been paid correctly since 2006. *See id.* at 9-10.

Wilding went to see Dr. James P. Smith, M.D, who apparently is a psychiatrist, "for mental health care and support" and states that she became disabled when she tried to both "work the night shift and do a professional audit by myself" of the payroll records. *Id.* at 10-11.

The audit still was not finished by July 2011, but Mohnkern and the Union "encouraged" her that back wages from 2006 to 2011 would be paid. *Id.* at 13, 16. Mohnkern refused to pay Wilding for 30 days of improperly-unpaid work between March and December 2010. *Id.* at 30.

In 2011, Wilding refused to take medical leave that Mohnkern suggested she take, and Mohnkern notified Wilding's unnamed "psychiatrist" – perhaps Dr. Smith – that she found Wilding to be "confused, [and] psychotic" after Wilding reported "mass cooperate [sic] corruption in the payroll and plans to take action against discriminatory employment practices." *Id.* at 27-28. The psychiatrist insisted that Wilding start taking an antipsychotic drug and stop taking her medication for ADHD, but Wilding refused because she was "not psychotic, manic, or depressed." *Id.* at 31. The doctor tried to convince Wilding to apply for disability, but she refused because she was not disabled. *Id.* at 32. The doctor asked Wilding to let him apply for SSD benefits for her "based on working in an unsafe working place that was hostile and going to retaliate against [her]" and he agreed that she was not otherwise disabled, so she "agreed" to accept SSD benefits. *Id.* But Wilding says that, even though she never applied for SSD benefits because she decided she "didn't want it," she "got it anyway" because of the psychiatrist's diagnosis of "organic brain syndrome" that the doctor and SSD caseworker refused to correct. *Id.*

### IV. ANALYSIS

**A. Wilding fails to state a claim for violation of the ADEA and her suit brought under the ADEA appears to be untimely filed.**

To state a claim for adverse-employment action that violates the ADEA, the plaintiff must allege facts to show that she is in a protected class, and that the employer took an adverse action against her because of her age. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d

1220, 1227 (10th Cir. 2000) (noting that a prima facie showing of discrimination under the ADEA or Title VII "might vary somewhat depending on the context of the claim and the nature of the adverse employment action alleged"). But "[t]he critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination." *Id.* Wilding alleges no facts to indicate that she belongs to a protected class and was not properly paid because of her age, thus she has failed to state a claim for violation of the ADEA.

Further, as a prerequisite to bringing a suit alleging age, race, disability, or gender discrimination or retaliation under Title VII of the Civil Rights Act, the ADA, the ADEA, or the Rehabilitation Act, a plaintiff must clear three procedural hurdles: timely file a discrimination charge with the EEOC; receive a right-to-sue letter from the EEOC; and file suit within ninety days of receiving the letter. *See* 42 U.S.C. § 2000e–5(e)(1), (f)(1); 29 U.S.C. § 633a(b)(3); *Jones v. Runyon*, 32 F.3d 1454, 1456 (10th Cir. 1994) (applying Title VII's exhaustion requirement and limitations period to the ADEA); *Barnes v. Gorman*, 536 U.S. 181, 184-85 (2002) (holding that the Rehabilitation Act's procedures govern ADA claims); *Johnson v. Orr*, 747 F.2d 1352, 1356-57 (10th Cir. 1984) (applying Title VII's jurisdictional requirements to the Rehabilitation Act); *Apsley v. Boeing Co.*, 691 F.3d 1184, 1210 (10th Cir. 2012) (noting that under both Title VII and the ADA, "exhaustion of administrative remedies is a prerequisite to suit" for each discrete discriminatory or retaliatory act). "Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984). Adding a 3-day mailing time to the 90-day time period after May 2, 2013, *see id.* at 148 n.1 (applying the 3-day mailing rules found in Fed. R. Civ. P. 6 to determine the "presumed date of receipt" of an

EEOC right-to-sue letter), Wilding was required to file suit by August 5, 2013.  *See* Rule 6(a)(1(C).  By failing to file suit until August 12, 2013, it appears that Wilding did not file her Complaint for discrimination or retaliation under the ADEA or any other federal discrimination statute timely, and those claims are now barred.

**B.  Wilding fails to state a claim for violation of the Equal Pay Act, and such claims appear to be time-barred.**

Insofar as Wilding is bringing claims for violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d), the Amendment to her Complaint indicates that the last time she was allegedly not properly paid was December 2010.  *See* Doc. 6 at 30.  "The general limitations period for an EPA claim is two years . . . ."  *Keller v. Crown Cork & Seal USA, Inc*., 491 Fed. App'x 908, 912, 2012 WL 3196002, *4 (10th Cir. Aug. 8, 2012).  Wilding did not file suit by December 31, 2012.  The statute of limitations for a "willful violation" of the EPA[2] is 3 years, *see id.*, but even though Wilding includes the words "intentional" and "willful" in her Amendment, no facts support a claim that Christus St. Vincent willfully failed to properly pay her and she fails to allege sufficient facts to describe how she was not paid equally with male employees.  *See Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1311 (10th Cir. 2006) (noting that, under the EPA, "the plaintiff must establish a prima facie case of discrimination by demonstrating that employees of the opposite sex were paid differently for performing substantially equal work").  Wilding fails to state a claim for violation of the EPA.

---

[2]  The statute of limitations for a claim for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, is also two years, or three years for a willful violation.  *See* 29 U.S.C. § 255(a); *Johnsen v. Allsup's Convenience Stores, Inc.*, 125 N.M. 456, 461, 963 P.2d 533, 538 (Ct. App. 1998).

### C. Wilding's federal claim against her union may be time barred.

Insofar as Wilding may be attempting to bring a federal claim against her union – apparently for allegedly breaching its duty of fair representation under the Labor Management Relations Act, 29 U.S.C. § 185 et seq., it appears that the six-month statute of limitations for hybrid § 301 and unfair-representation claims may bar her claims. *See Carlton v. Local No. 7 United Food & Commercial Workers Int'l. Union*, No. 01-1013, 43 Fed. App'x 289, 295, 2002 WL 1748671, *4 (10th Cir. July 26, 2002) (noting that, in cases in which the union "'rejects or abandons the claims of an aggrieved employee at some point in the grievance process,' . . . the six-month limitations period begins to run when the employee knows or, through the exercise of reasonable diligence, should have known of that union's decision or action'") (quoting *Lucas v. Mountain States Tel. & Tel.*, 909 F.2d 419, 421 (10th Cir. 1990) (per curiam)).

### D. Wilding has failed to allege facts to support any federal cause of action against Dr. Smith, Mr. Martinez, or Mr. Yontz.

Although she used a form complaint for actions brought under 42 U.S.C. § 1983, no facts establish that any Defendant is a governmental entity or employee. To invoke the Court's subject-matter jurisdiction under § 1983, a plaintiff must allege facts showing that "some person has deprived him of a federally protected right;" and "that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

> [A] plaintiff's failure to properly allege a "state action" in a § 1983 complaint strips the district court of subject matter jurisdiction [] if jurisdiction is alleged under 28 U.S.C. § 1343(3). *See Elliott v. Chrysler Fin.*, 149 Fed. Appx. 766, 768-69 (10th Cir.2005); *see also Monks v. Hetherington*, 573 F.2d 1164, 1167 (10th Cir. 1978) ("There is no demonstration of state action and, therefore, no basis for civil rights jurisdiction [pursuant to 28 U.S.C. § 1343(3)] in the case at bar.").

*Mehdipour v. Matthews*, No. 10-6073, 386 Fed. App'x 775, 778 n.3, 2010 WL 2748802, *3 n.3 (10th Cir. July 13, 2010) (unpublished). Because Wilding has not alleged facts demonstrating that any of the Defendants are state actors, she has failed to invoke this Court's subject-matter jurisdiction under § 1983 or to state a § 1983-claim against them.

Having determined that Wilding has failed to state sufficient facts to support a viable federal cause of action against any Defendant, insofar as Wilding may have viable state-law statutory or common-law claims against any entity or individual that are not pre-empted by the LMRA, *see, e.g., Cruse v. St. Vincent Hosp.*, 729 F. Supp.2d 1269 (D.N.M. July 27, 2010) (holding that suit against hospital for violations of the New Mexico Minimum Wage Act was not pre-empted by the LMRA), the Court will not take supplemental jurisdiction over them.

**IT IS ORDERED THAT** Wilding's motion to proceed IFP [Doc. 3] is DENIED and that her Complaint is dismissed without prejudice, and that any other pending motion she has filed is MOOT.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**